IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHN H. MONTGOMERY, III, and<br>PAM MONTGOMERY,<br><br>    Plaintiffs,<br><br>v.<br><br>DAN GLICKMAN, as the Secretary of<br>the United States Department of Agriculture;<br>KEITH KELLEY, as the Administrator of<br>the Farm Service Agency; KEITH KELLEY,<br>as Executive V.P. of the Commodity Credit<br>Corporation; THE UNITED STATES<br>DEPARTMENT OF AGRICULTURE;<br>THE FARM SERVICE AGENCY; THE<br>COMMODITY CREDIT CORP.; MARY<br>G. MCINNIS; ROBERT D. SPRINGER,<br>and JOAN G. GRIDER,<br><br>    Defendants. | CIVIL ACTION NO. 99-JEO-0090-W |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on the notice of substitution and an application for an order of substitution (doc. 24) filed by the United States of America ("United States") pursuant to the "Federal Employees Liability Reform and Tort Compensation Act of 1988" ("FELRA"), Pub. L. No. 100-694, § 6 (November 18, 1988), *amending* 28 U.S.C. § 2679(d)(1), and 28 C.F.R. Pt. 15.3, and the motion of plaintiffs John H. and Pam Montgomery ("the plaintiffs") to set aside the certification of the scope of employment (doc. 27).[1] Upon consideration of the same, the court finds that the application for an order of substitution is due to be granted and the defendants'

---

[1] References herein to "Doc. ___" are to the pleading numbers assigned by the Clerk of the Court, which are found in the lower right hand corner of the particular pleading.

motion to set aside the certification is due to be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff John Montgomery contracted with the United States Department of Agriculture ("Department"), Agriculture Stabilization Conservation Service, also known as the Farm Service Agency ("FSA"), under the Conservation Reserve Program ("CRP") in 1986 and 1990. (Doc. 1, ¶ 6). According to the complaint, "they [the plaintiffs] played a significant role in shedding light on voting fraud in Greene County, Alabama" and have been "active in a Greene County organization known as 'Citizens for a Better Greene County.'" (*Id.*, ¶ 8). In about 1997, the FSA, acting through Mary McInnis, the Greene/Sumter County FSA Office Executive Director, terminated two CRP contracts between the agency and John Montgomery. The agency also demanded a return of $20,647.00 in rental payments and $8,000.00 interest. (*Id.*, ¶ 10). About the same time, "several Greene County citizens and other individuals held a 'press conference' calling for the United States Attorney General, Janet Reno, to investigate the 'welfare fraud' they understood plaintiff [John Montgomery] to have committed as determined by the Greene/Sumter County FSA Office." (*Id.*, ¶ 12).

Plaintiff John Montgomery appealed the termination of the contracts by the Greene/Sumter County FSA office to the National Appeals Division ("NAD") of the Department. An evidentiary hearing was conducted on February 27 and March 6, 1998, before hearing officer Rhonwyn D. McNeill. McNeill ruled in favor of Montgomery. That decision was summarily reversed by the National Director of the NAD on July 13, 1998.

Montgomery initiated the present civil action pursuant to the Administrative Procedures Act. *See* 5 U.S.C. § 702. The first count of the original complaint seeks damages, attorney's

2

fees, and other relief as determined by the court for violations of the Privacy Act of 1974. 5 U.S.C. § 552a(b). This claim is premised on the purported violation of the Act by the defendants as a result of the release of confidential information concerning the allegations of fraud involving Plaintiff John Montgomery. The second count seeks a review of the administrative decision of the Director of the NAD. Lastly, Montgomery seeks a stay of the administrative order.

The plaintiff amended the complaint by adding four state law claims, fraudulent misrepresentation, suppression, intentional interference with contract or business relations, and negligent supervision, and naming three defendants, Mary McInnis, Robert D. Springer and Joan G. Grider, in their individual capacity. (Doc. 19, ¶ 13). As already noted, McInnis is the Greene/Sumter County FSA Executive Director, Springer is the FSA Alabama State Executive Director, and Grider is the FSA Chief Agricultural Program Specialist. The amended complaint also added Pam Montgomery as a plaintiff.

The United States of America, through the United States Attorney for the Northern District of Alabama, filed a "Certification of Scope of Employment," providing, in pertinent part, "On the basis of the information now available with respect to the incidents referred to [in the complaint], the individual Federal Defendants, Mary G. McInnis, Robert D. Springer, and Joan G. Grider, were acting within the scope of their employment as employees of the United States at the time of such incidents." (Doc. 23, ¶ 2). The United States also filed a "Notice of Substitution and Application for Order Thereon." (Doc. 24). Therein, the United States seeks to substitute itself in the place of the named defendants by operation of law as the party defendant as to the claims enumerated in Counts Four through Seven. *See* 28 U.S.C. §§ 1346(b), 2671-80.

3

The plaintiffs have filed a motion to set aside the scope of employment certification submitted by the United States as to Counts Four through Six.[2] (Doc. 27). The plaintiffs assert that the certification is premature because no discovery has been conducted. (*Id.*, ¶ 2). Alternatively, they request that the certification be stayed to permit adequate discovery and an evidentiary hearing. (Doc. 27, p. 2).

## II. SCOPE OF EMPLOYMENT CERTIFICATION

### A. Generally

#### 1. Judicial review

The Federal Tort Claims Act is the exclusive remedy available to a plaintiff for any injury or loss "resulting from the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(1). The Eleventh Circuit has stated as follows:

> Under 28 U.S.C. § 2679(d)(1), upon the Attorney General's certification of scope of employment, the pending action "shall be deemed an action against the United States . . ., and the United States shall be substituted as the party defendant." Despite this seemingly commanding language, the Supreme Court has held, in *Gutierrez de Martinez v. Lamagno*, — U.S. ----, ----, 115 S. Ct. 2227, 2236, 132 L. Ed. 2d 375 (1995), that the Attorney General's certification is reviewable by the district court. We had previously held this to be the case in *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1541 (11th Cir. 1990), *amended*, 924 F.2d 1555 (11th Cir.), *cert. denied*, 502 U.S. 813, 112 S. Ct. 62, 116 L. Ed. 2d 37 (1991). In that case, we also held that although the Attorney General's certification is prima facie evidence that the employee acted within the scope of his employment, the district court was to decide the issue de novo. *Id.* at 1543. However, "[t]he burden of altering the status quo by proving that the employee acted outside the scope of employment is . . . on the plaintiff." *Id.*
>
> The question of whether an employee's conduct was within the scope of

---

[2] The plaintiffs concede that the certification is appropriate for Count Seven, regarding negligent supervision. (Doc. 27, ¶ 4).

his employment "is governed by the law of the state where the incident occurred." *See S.J. & W. Ranch*, 913 F.2d at 1542; *Williams v. United States*, 350 U.S. 857, 76 S. Ct. 100, 100 L. Ed. 761 (1955) (*per curiam*), *vacating* 215 F.2d 800 (9th Cir. 1954); 28 U.S.C. § 1346(b).

*Flohr v. Mackovjak*, 84 F.3d 386, 390-91 (11th Cir. 1996). Building on the holding in *Flohr* and other Circuit Court decisions, the Fourth Circuit Court of Appeals in *Maron v. United States*, 126 F.3d 317 (4th Cir. 1997), held:

> We join with our sister circuits in placing the burden of proof on the plaintiff to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment. We specifically hold that the certification satisfies the government's prima facie burden but does not carry any evidentiary weight unless it details and explains the bases for its conclusions. If the plaintiff presents persuasive evidence refuting the certification, the government must provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment.

*Maron*, 126 F.3d at 323-24.

### 2. Discovery

"[I]f there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing if necessary. But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible, although these are matters within its discretion." *Schrob v. Catterson*, 967 F.2d 929, 936 (3rd Cir. 1992). The Fourth Circuit in *Gutierrez De Martinez v. Drug Enforcement Administration*, 111 F.3d 1148, 1156 (4th Cir.), *cert. denied*, 522 U.S. 931 (1997), adopted the position that a

> district court may allow (in its discretion) limited discovery or conduct an evidentiary hearing, but should not do so if the certification, the pleadings, the affidavits, and the supporting documentary evidence do not reveal an issue of material fact. It is for the district court to assess the sufficiency of the evidence produced by the plaintiff. Only if the district court concludes that there is a

genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.

*Accord Maron*, 126 F.3d at 327 (discovery shall be narrowly circumscribed). In *S.J. & W. Range, Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir. 1990), *amended on other grounds*, 924 F.2d 1555 (11th Cir. 1991), *cert. denied*, 502 U.S. 813 (1992), the Eleventh Circuit reviewed the district court's dismissal of the plaintiff's complaint for libel and slander against the United States Attorney for the Southern District of Florida. The dismissal was a consequence of the substitution of the United States for the United States Attorney as the defendant in the case pursuant to the FELRA after the United States certified that the individual defendant's statements were made within the scope of his duties as United States Attorney. The substitution of the United States as the defending party then deprived the district court of jurisdiction to entertain the plaintiff's claims because the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(h), precludes libel and slander claims against the United States. Because the district court erroneously held that the Attorney General's certification decision for purposes of substitution is not subject to judicial review, the court reversed and remanded the case for an evidentiary hearing on whether the statements were made within the scope of his employment. In dicta, the court stated, "On remand the district court should conduct a de novo hearing on whether [the defendant's] . . . conduct occurred within the scope of his employment and permit the plaintiff full discovery on the scope question." *Range, Inc.*, 913 F.2d at 1544 (footnote omitted). In so noting, the court, in a footnote referenced *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990), where the Sixth Circuit reversed a district court decision finding the scope of employment certification nonreviewable and thereby denying the plaintiff's discovery requests on the scope of

employment issue. Thus, this court concludes that if there is a dispute of a material fact on the scope of employment issue, the plaintiff is entitled to conduct limited discovery and to an evidentiary hearing.

### 3. Scope of employment under Alabama law

The doctrine of respondent superior is clearly established under Alabama law. United States Magistrate Judge Cassady set forth the pertinent considerations in *Pritchett v. Milstid*, 891 F. Supp. 1541, 1545-47 (S.D. Ala. 1995), which also concerned a scope of employment issue under section 2679(d)(1). He stated:

> In *AVCO Corp. v. Richardson*, 285 Ala. 538, 234 So. 2d 556 (1970), Alabama Supreme Court stated the doctrine of respondent superior in Alabama as follows:
>
>> Responsibility of the master for acts of the servant does not arise simply from the circumstance that at the time of the injury the person inflicting it was in the employment of another. The act inflicting the injury must have been done in pursuance of authority either express or implied. It must be an act which is fairly incident to the employment, in other words, an act which the master has set in motion. The facts of each particular case must determine the question. *Alabama Fuel & Iron Co. v. Powaski*, 232 Ala. 66, 67, 166 So. 782 [ (1936) ]. The general rule of responsibility is that, if the act resulting in the injury complained of was within the scope of the servant's employment, the master will be liable therefor, although the act was in violation of the master's instructions as to the method of performing the work, or contrary to instructions, or expressly forbidden by him. *St. Louis-San Francisco Ry. Co. v. Robbins*, 219 Ala. 627, 629, 123 So. 12, P [4] [(1929)].
>
> 285 Ala. at 541, 234 So. 2d at 559. *See also Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 174 (5th Cir. 1975) (applying Alabama law) ("The law is clear that if an agent's act was incident to carrying out the duties assigned to him by his master, the master may be held liable, even though he did not authorize the agent's means, and also though the agent may have sought to accomplish the master's business in a manner contrary to the master's expressed instructions.")

7

Under Alabama law of respondent superior, an employer faces liability for the act of an employee where the act complained of is one that can be said to further the employee's employment or the employer's business. *See Jessup v. Shaddix*, 275 Ala. 281, 154 So. 2d 39, 42 (1963). *See also Sibley v. Adams*, 56 Ala. App. 572, 324 So. 2d 287 (1975), *cert. denied, Sibley v. Adams*, 295 Ala. 121, 324 So. 2d 291 (1975) (jury verdict upheld under respondent superior; defendant employee's conduct was within the line and scope of his employment because when defendant employee was engaged to cut trees, the risk was present that he would stray onto plaintiffs' adjoining land, and therefore such a diversion was incident to the authorized cutting).

"[T]he conduct of the employee, 'to come within the rule [of respondent superior], must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment.'" *Chamlee v. Johnson-Rast and Hays*, 579 So. 2d 580, 582 (Ala. 1990) (quoting *Rochester-Hall Drug Co. v. Bowden*, 218 Ala. 242, 243, 118 So. 674, 674 (1928)). "In extending the liability [under respondent superior] to a willful wrong, the motive behind the act does not defeat liability, unless it can be shown that the servant acted from wholly personal motives having no relation to the business of the master." *Plaisance v. Yelder*, 408 So. 2d 136, 137 (Ala. Civ. App. 1981)(citations omitted). *See also Hendley v. Springhill Memorial Hospital*, 575 So. 2d 547 (Ala. 1990).

. . . .

Most Alabama cases which have held that an employee was not acting within the scope of his employment under the doctrine of respondent superior have turned on the fact that the action complained of did not further the employer's business. *See Conner v. Magic City Trucking Service, Inc.*, 592 So. 2d 1048 (Ala. 1992) (directed verdict upheld in favor of employer on respondent superior claim, where court found no substantial evidence that employee truck driver was furthering his employer's business, when, holding a snake, he chased the plaintiff until she collapsed). *See also Prosser v. Glass*, 481 So. 2d 365 (Ala. 1985) (trial court's grant of summary judgment in favor of employer under doctrine of respondent superior affirmed; defendants' employee, who was hired to assist in the development of a swirlplate, was not acting within the scope of his employment at the time of the accident in question, where his repair of a truck belonging to a neighboring business would not have reasonably furthered his employer's business of development of the swirlplate).

An employer may also escape respondent superior liability where the employee has made clear to the plaintiff that the conduct in question was

8

undertaken on the employee's own behalf, and not as an employee of the employer. . . .

*Pritchett*, 891 F. Supp. at 1545-46. *Accord Hulbert v. State Farm Mut. Auto Ins. Co.*, 723 So. 2d 22 (Ala. 1998).[3]

### B. Discussion

The plaintiffs assert that certain actions of the individual defendants show they were acting outside the scope of their employment. The plaintiffs specifically claim in the original complaint that "McInnis, Springer and Grider, acting as individuals and not as employees of USDA-FSA, suppressed material facts relevant to the hearing held by Hearing Officer McNeill." (Doc. 1, ¶ 64). These actions include:

1. On September 24, 1997, Defendant McInnis mailed a letter to Plaintiff J. H. Montgomery, III and stated, among other things, that certain land transactions had not been reported to FSA.

2. On December 10, 1997, Defendant McInnis mailed a letter to Plaintiff J. H. Montgomery, III which stated among other inaccuracies, that "A recent spot-check revealed evidence of prolonged grazing on 9.9 acres in field 2B on tract

---

[3] The court in *Hulbert* stated:

> "To recover from a tortfeasor's employer on the theory of respondeat superior, the plaintiff must show by substantial evidence that the employee's act was within the scope of the employee's employment. *Jessup v. Shaddix*, 275 Ala. 281, 283, 154 So. 2d 39, 41 (1963) (citing *Red's Elec. Co. v. Beasley*, 272 Ala. 200, 129 So. 2d 676 (1961)). An act is within an employee's scope of employment if the act is done as part of the duties the employee was hired to perform or if the act confers a benefit on his employer. *See Jessup*, 275 Ala. at 284, 154 So. 2d at 41. In *Solmica of the Gulf Coast, Inc. v. Braggs*, 285 Ala. 396, 401, 232 So. 2d 638, 642 (1970), this Court stated: "'The rule ... for determining whether certain conduct of an employee is within the line and scope of his employment is substantially that if an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment.'" (Quoting *Nelson v. Johnson*, 264 Ala. 422, 427, 88 So. 2d 358, 361 (1956)). This Court further stated in *Braggs*, 285 Ala. at 401, 232 So. 2d at 643, that "[t]he conduct of the employee, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment."

*Hulbert*, 723 So. 2d at 23.

9

number 1528, on CRP land including animals present with an electric fence. A homesite, storage shed and shop has [sic] been built on 1.3 acres of CRP land."

3. Defendant Robert D. Springer misrepresented information to Hearing Officer McNeill when he mailed a letter to her dated February 19, 1998, and stated that "[t]he Agency does not believe that agency personnel have any information or evidence not otherwise contained in the administrative record. Therefore, the Agency does not believe it is necessary for the appellant's attorney to depose any FSA employees in regard to this case. . . . The administrative record submitted to the NAD and the appellant contains all relevant information and documentation relied upon by the Agency in making the decision under appeal."

4. On March 23, 1998, Defendant Springer wrote a letter to Hearing Officer McNeill which, among other things, stated: "The Agency would **like to reiterate** that the Agency based its decisions on the information available to them along with the regulation and procedure. Alawest nor Melissa Atkins signed a successor-in-interest contract for the land purchased from Montgomery. Regulations require that the contracts be terminated and all payments plus interest be refunded."

(Doc. 28, pp. 4-5)(emphasis in original). The plaintiffs assert that these statements by the individual defendants are contradicted by documents later provided by defendants' counsel in discovery.

### 1. September 24, 1997 and December 10, 1997 letters

Defendant McInnis signed a letter on September 24, 1997, as the County Executive Director for the Greene/Sumter County FSA Office of the USDA which was directed to Plaintiff John Montgomery. The letter stated that after examining alleged improprieties by Montgomery through a review of the applicable CPR file, Montgomery's testimony, spot-check reports, and program provisions, the reviewing committee determined that he "did not make a good faith effort to comply with the terms and conditions of [his] contract." (Doc. 28, Ex. C, p. 110). McInnis demanded a refund of all payments received in the amount of approximately $20,000 and interest. (*Id.*). The letter also informed Montgomery of his review rights.

10

After McInnis issued the September 24, 1997 letter on behalf of the review committee, it reconsidered its determination and once again found against Montgomery. (Doc. 28, Ex. E, p. 541). That finding was documented in McInnis' December 10, 1997 letter to Montgomery. The letter also informs him of his right of review of the decision. (*Id.*).

Counsel for the United States asserts that these letters "were written by McInnis as the agency's official notification to Montgomery of the actions taken against him, the reasons therefore, and of his opportunity to appeal the decision. Such notifications were required by agency rules, and McInnis, in her capacity as the Greene County Executive Director, was required to send them." (Doc. 30, p. 6). Counsel goes on to argue, "Regardless of any alleged misrepresentations in the letters, it cannot be argued that McInnis acted outside the scope of her employment by writing and sending them to Montgomery." (*Id.*). The plaintiffs' retort, "The acts of writing and mailing letters are outside the scope of employment when such actions facilitate misrepresentations, suppressions, interference with contracts and denial of due process." (Doc. 33, p. 5). They question whether certain property is even under the CRP (doc. 28, Ex. D, ¶ 12), whether the FSA Office in Greene County failed to properly classify certain property as "successor-in-interest property" when it was sold. (*Id.*, ¶¶ 5, 7). The plaintiffs further assert that McInnis was a participant "in an effort to further Defendant Springer's personal career within the Department of Agriculture." (Doc. 33, p. 5).

### 2. February 19, 1998 and March 23, 1998 letters

After Montgomery's case was appealed to the NAD and McNeill was designated as the Hearing Officer, Defendant Robert Springer, as State Executive Director of the USDA FSA, sent a letter to McNeill. The February 19, 1998 letter concerned John Montgomery's request to

obtain pre-hearing statements in the form of depositions from FSA employees concerning his appeal. (Doc. 28, Ex. F). Springer told McNeill, "The Agency does not believe that agency personnel have any information or evidence not otherwise contained in the administrative record." (*Id.*). Accordingly, he opposed the request for depositions. He also stated, "The administrative record submitted to the NAD and the appellant contains all relevant information and documents relied upon by the Agency in making the decision under appeal." (*Id.*). The plaintiffs assert that this statement is a misrepresentation. Specifically, they assert that the FSA failed to produce copies of the Greene County FSA Committee minutes preceding September 1997 that would show that the land in question was treated as "successor-in-interest" property earlier than the time acknowledged by the FSA. (Doc. 28, Ex. D, ¶¶ 9-11). The plaintiffs further assert, "Springer's conduct was intended by him to further his personal authority and power within the United States Department of Agriculture, and to cover his mishandling of the reorganization of [the] FSA in Alabama in order to gain minority support for his promotion to Executive Director of State Operations, USDA Farm Service Agency, in Washington, DC." (*Id.*, ¶ 6).

In the March 23, 1998 letter, Springer wrote McNeill and reiterated that the Agency's decision was based on the information available to it and applicable regulations and procedures. He emphasized that certain purchasers of Montgomery's property, particularly Alawest and Melissa Atkins, did not sign a "successor-in-interest" contract which resulted in the termination of the pertinent contracts and the requests for the return of payments under the contract and interest. (Doc. 28, Ex. G). The plaintiffs assert that certain documents produced during discovery in this case refute the statements of McInnis and Springer regarding, among other

12

things, the FSA's position regarding the finding of a lack of a "successor-in-interest" on the sale of various parcels of property by Montgomery.

The plaintiffs assert that due to the individual defendants' misrepresentations, suppression of information, interference with Montgomery's contractual rights, and the resulting denial of due process in the administrative proceedings, certification that the individual defendants were acting within the scope of their employment is not appropriate. They seek to have this court set aside the certification or withhold a decision pending discovery and a hearing. (Doc. 27). Because the issue of whether to allow the certification and discovery are so interrelated, they will be discussed together.

After a close examination of the plaintiffs' allegations regarding the purportedly personal actions of the individual defendants, the court is left with the inescapable conclusion that such activities were incident to their official duties as USDA employees. Under Alabama law, as outlined above, the issue is whether the acts "further the employee's employment or the employer's business or whether the defendants were acting on their own behalf." *Pritchett*, 891 F. Supp. at 1546. The scope of employment in Alabama includes actions that are accomplished without permission or in a manner contrary to the employer's expressed instructions or when expressly forbidden. *Id.*, 1545, *citing AVCO Corp.*, 234 So. 2d at 559.

The plaintiffs' examples, which are used to demonstrate that the individual defendants acted outside the scope of their employment, are matters which are incidental to their employment. First, concerning the letters written by McInnis to John Montgomery (September 24, 1997, and December 10, 1997), it is evident that they are a consequence of the administrative review process. Both letters formally inform Montgomery of the determination of the

Greene/Sumter County FSA Committee concerning the review of alleged violations of his CRP contract. *See* 7 C.F.R. Part 7. The creation and mailing of such letters necessarily are within the scope of McInnis' employment as the Executive Director. Even presuming that the letters contain misrepresentations or are incomplete, that does not remove the activity of notifying Montgomery of the Committee's determination from the scope of her employment. Second, the letters generated by Springer (February 19, 1998, and March 23, 1998 letters) are also a consequence of the administrative review process and are within the scope of his employment as the FSA State Executive Director. More particularly, the first letter was in direct response to the request by counsel for John Montgomery to depose certain FSA employees. The second letter was an acknowledgment of and in response to correspondence from Pam Montgomery. Both of these letters were generated and sent during the review of John Montgomery's appeal of the decision of the local committee. Again, presuming that the letters contain misrepresentations or are incomplete, that does not remove Springer's actions from the scope of his employment as the Executive Director.

The plaintiffs' memorandums and John Montgomery's affidavit state that certain documents, which refuted the statements of McInnis and Springer and the position taken by the FSA (*see* doc. 28, Ex. H), were not disclosed to John Montgomery, his counsel, or the hearing officer. They were not disclosed until recently during the discovery phase of the present proceeding. Accepting the assertion that these records refute the positions previously advanced by the defendants herein, that does not negate a finding that the individual defendants were acting within the scope of their employment under Alabama law.

A review of the file clearly indicates that there is a dispute as to the application of the

14

"successor-in-interest" rules to the present matter. However, those disputes are not under the circumstances before this court material on the issue of the "scope of employment." Even were this court to conclude, after allowing discovery and a hearing, that the individual defendants had mixed motives concerning their actions in this case, that would not preclude approval of the certification. The scope of employment certification is to be denied only when the individual acts "from wholly personal motives having *no relation* to the business of the master." *Plaisance*, 408 So. 2d at 137 (emphasis added).

The plaintiffs also posit, "Defendant Springer's conduct was intended by him to further his personal authority and power within the United States Department of Agriculture, and to cover his mishandling of the reorganization of FSA in Alabama in order to gain minority support for his promotion to Executive Director of State Operations, USDA Farm Service Agency, in Washington, D.C." (Doc. 33, Reply Brief, ¶ 6). This argument is not supported by the affidavits submitted by plaintiff John Montgomery or the attachments to the plaintiffs' memorandums. Even if the allegations were supported in the record, they do not establish that Springer's actions as alleged have no relation to his employment.

In this case, the actions of McInnis and Springer were clearly related and incident to their employment. That does not mean, presuming that the allegations are correct, that this court necessarily agrees with the actions of McInnis or Springer. It is simply that under the circumstances, even as alleged by the plaintiffs, the individual defendants were acting within the scope of their employment. Although it seems untenable that the making of misrepresentations, suppression of information, interfering with contractual relationships, or violations of due process by an individual during an administrative proceeding could be covered by the "scope of

15

employment" provisions of applicable federal law, the court must find otherwise. Premised on the state law definitions this court must apply and accepting the plaintiffs' allegations, the United States is due to be substituted for defendants McInnis and Springer. Any wrongs purportedly committed by McInnis and Springer in the scope of their employment are between them and their employer.

Throughout this discussion, the court has referenced defendants McInnis and Springer. Conspicuously absent is defendant Grider. The plaintiffs allege, "Grider acted as a conduit between Defendant McInnis and Defendant Springer in matters pertaining to my [John Montgomery's] CRP contracts and was heavily involved in the FSA presentation to Hearing Officer McNeill during the National Appeal. Defendant Grider worked closely with Defendant McInnis during the time period concerning matters which are the subject of this cause of action." (Doc. 33, Ex. A, ¶ 16). They also state, "Grider and McInnis participated in an effort to further Defendant Springer's personal career within the Department of Agriculture." (*Id.*, reply brief, ¶ 7). Presuming the plaintiffs are correct that Grider worked closely with McInnis and Springer during the relevant period and that she participated in an effort to further Springer's career, those actions do not preclude certification as to her.

Although there may be instances where discovery and a hearing on the certification are appropriate, this is not such a situation for the reasons already discussed. The court has afforded the plaintiffs the benefit of the allegations, both substantiated and unsubstantiated, and finds that certification is warranted. Additional discovery is not necessary or appropriate.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the scope of employment certification

by the United States appropriately includes the conduct of the individual defendants. The court further concludes that additional discovery is not necessary or appropriate in this case. An order consistent with the findings herein will be entered.

**DONE,** this the ___ST___ day of March, 2000.

                                                JOHN E. OTT
                                              UNITED STATES MAGISTRATE JUDGE